Commonwealth *vs.* Jeffrey F. Bregnard.

Bristol.    June 9, 1975. — September 17, 1975.

Present: Hale, C.J., Goodman, & Grant, JJ.

*Jury and Jurors.  Practice, Criminal,* Charge to jury, examination of jurors, Deliberation of jury.

Reversal of a conviction was not required by the fact that the judge omitted a clause of the supplementary charge given to the jury in accordance with *Commonwealth* v. *Tuey,* 8 Cush. 1 (1851), as modified by *Commonwealth* v. *Rodriquez,* 364 Mass. 87 (1973), and added an explanation which was more confusing than clarifying, but this court disapproved the departure from the Tuey-Rodriquez charge. [491-493]

At a criminal trial, there was no abuse of discretion in the judge's refusal to poll the jury. [493-494]

Indictment found and returned in the Superior Court on February 15, 1973.

Commonwealth *v.* Bregnard.

The case was tried before *Linscott, J.*
*Daniel F. Toomey* for the defendant.

GOODMAN, J.   The defendant appeals[1] (G. L. c. 278,
§§ 33A-33G) his conviction of armed robbery. Shortly be-
fore 6:00 P.M. on January 21, 1973, two men entered a drug-
store in Norton, one armed with a shotgun. They ordered
those in the store into the back room and demanded that
the owner give them the "Class A" narcotics. He complied.
A customer who happened to enter the store at about the
same time as the two men and whose suspicions had been
aroused had noted the automobile in which they had ar-
rived and gave the police a description of the vehicle. The
police traced it to the defendant and arrested him the next
day. In the automobile the police found a box of demerol
with the druggist's notations and so packaged as to give
rise to the obvious inference that it had been taken from
the store. The defendant was tried together with a third
person, Cavalieri, identified as having remained in the auto-
mobile during the robbery. At the trial the clerk and five
customers in the store during the robbery identified the
defendant as the one who had carried the shotgun. One
Cassidy, whose house the police had searched for drugs on
January 25, testified that on January 21 he had heard
Cavalieri, who was then living in Cassidy's house, together
with the defendant, and one Robinson, the defendant's
companion in the drugstore, planning a robbery and that
they had left about 5:00 P.M. that evening with the shot-
gun to accomplish the crime. Robinson, who had pleaded
guilty and had been sentenced, testified that he, Cassidy,
and a third person, whom he did not know, had committed
the robbery. The defense was an alibi. The defendant's only
contentions concern the supplementary charge given to
the jury in accordance with *Commonwealth* v. *Tuey,* 8
Cush. 1 (1851), as modified by *Commonwealth* v. *Rodri-*

---

[1] The district attorney was not permitted to argue since he had not
submitted a brief prior to oral argument. A thorough brief and oral
argument by the district attorney would have been helpful to the court.

*quez,* 364 Mass. 87, 101-102 (1973) (decided before the trial of this case) and the denial of his motion to poll the jury.

The jury began its deliberations at approximately 2:15 P.M. on June 6, 1974, the fourth day of trial. At 8:30 P.M. the jury was recalled by the trial judge, and he read them the *Tuey* charge, as modified in the *Rodriquez* case (the *Tuey-Rodriquez* charge). He read it practically verbatim but with a deletion and some added explanation.

1. The *Rodriquez* case and the suggested charge in that case is a careful effort to transform the *Tuey* charge into an evenhanded admonition that each juror in the majority as well as each juror in the minority should reconsider his position — but that ultimate agreement must be "the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows." It also eliminates the erroneous suggestion that "the case must at some time be decided."[2] In this case the *Tuey-Rodriquez* charge was read practically verbatim except for the omission of the very last clause.[3] The elaboration in the omitted clause was inserted by the Supreme Judicial Court in the *Rodriquez* case, and we disapprove its omission. But particularly in the light of the portion preceding it, we cannot say, in the circumstances of this case, that a reversal of the conviction is required.

The trial judge's attempt at further explanation was more nearly confusing than clarifying. The defendant finds fault with the statement made by way of explanation:

---

[2] See *Huffman* v. *United States,* 297 F. 2d 754, 759 (5th Cir. 1962), dissenting opinion quoted in ABA Standards Relating to Trial by Jury, § 5.4 (b) p. 151 (Approved Draft 1968): "I think a mistrial from a hung jury is a safeguard to liberty. In many areas it is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise."

[3] The last sentence of the *Tuey-Rodriquez* charge reads: "And, on the other hand, jurors for conviction ought seriously to ask themselves, whether they may not reasonably doubt the correctness of a judgment, which is not concurred in by others with whom they are associated"; the omitted clause reads: "and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

Commonwealth *v.* Bregnard.

"... and if the greater number of you are for a conviction, what this says is the lesser or the fewer should reconsider their position, and vice versa." He objects particularly to the use of the shorthand "vice versa" in stating the alternative. We disapprove this seemingly perfunctory treatment, but we do not believe that the jury could have failed to grasp its import — that it was addressed to the possibility that a majority might be for acquittal. It thus did not have, as the defendant argues, the flaw of *Commonwealth* v. *Brown,* 367 Mass. 24, 32 (1975), in which the charge gave "the impression that acquittal was not a real alternative"; nor did it vitiate the rest of the charge.

The defendant also argues that it was error to charge: "... there isn't any reason to believe that any other jury to whom the case will have to be or will be submitted again, if you people don't resolve it, will be able to do any better than you." This statement is somewhat ambiguous and should not have been used. However, it falls short of the statement deleted by the *Rodriquez* case from the original *Tuey* charge that "the case must at some time be decided." See also *Commonwealth* v. *Pleasant,* 366 Mass. 100, 105 (1974), and *Commonwealth* v. *Brown,* 367 Mass. 24, 31 (1975) (disapproval of references to cost of retrial). Cf. *Commonwealth* v. *Salemme, ante,* 102, 107-108 (1975). It seems more nearly an attempt to amplify the statement given in the *Tuey-Rodriquez* charge that, "You should consider that it is desirable that the case be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve persons more intelligent, more impartial, or more competent to decide it." Indeed, this addition by the trial judge apparently did not strike either of the defense attorneys as worthy of comment when given.[4]

---

[4] We have examined the defendant's subsidiary contentions and find them without merit. Further, no exception was taken to the action of the trial judge (of which the defendant now complains) in recalling the jury after six and one quarter hours. In any event, that was a matter of discretion. *Commonwealth* v. *Rollins,* 354 Mass. 630, 638 (1968).

Commonwealth *v.* Bregnard.

We take this occasion to point out the danger in departing from the *Tuey-Rodriquez* charge as set out in *Commonwealth* v. *Rodriquez, supra.* Whether the Supreme Judicial Court will ultimately insist that there be no variation whatsoever from it or from the illustrative charge in § 5.4 of the ABA Standards Relating to Trial by Jury, set out in *Commonwealth* v. *Rodriquez* at 102-103 (Appendix B), which is suggested as an alternative, we cannot say. In general, we cannot see any reason for any variation or amplification of the *Tuey-Rodriquez* charge. Further, "[s]uch departures impose on appellate courts the almost impossible task of weighing the prejudicial impact of a variation of the approved charge." *United States* v. *Flannery,* 451 F. 2d 880, 883 (1st Cir. 1971). "The impact can never be assessed accurately, for the relevant events take place in the secrecy of the jury room, and never appear in the trial record. For us to become involved, at this point, in gauging the coerciveness of various *Allen* — [*Tuey-Rodriquez*] type renditions would be to launch us on an unnecessary voyage in judicial review." *United States* v. *Angiulo,* 485 F. 2d 37 (1st Cir. 1973). But we cannot say that special circumstances may not arise which might justify a trial judge, in determining, after careful consideration, that some amplification or (as is less likely) some variation is appropriate.

2. Whether to poll the jury is a matter of the trial judge's discretion, and we cannot say the discretion was abused. *Commonwealth* v. *Richardson,* 354 Mass. 773 (1968), and cases cited. *Commonwealth* v. *Valliere,* 366 Mass. 479, 497 (1974). Contra, ABA Standards Relating to

*Commonwealth* v. *Moore,* 359 Mass. 509, 516 (1971). *Commonwealth* v. *Brunelle,* 361 Mass. 6, 12 (1972). See *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 97-98 (1973). We cannot say the discretion was abused. But see the *Rollins* case, *supra* ("It [the charge] should not be employed prematurely or indiscriminately") and the *Rodriquez* case, *supra,* at 100 ("Still, the charge has a sting, and our approval of it is not to be taken as an indication that it may be used prematurely or without evident cause"). Nor can we say in the circumstances of this case that the lapse of ten minutes from the *Tuey-Rodriquez* charge to the jury's return of its verdict was indicative of coercion. Compare *Commonwealth* v. *Brunelle, supra,* at 12; *Commonwealth* v. *Moore, supra,* at 516.

Trial by Jury, § 5.5, providing that "[t]he jury shall be polled at the request of any party or upon the court's own motion."

*Judgment affirmed.*